UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NAVIN SHARMA,

Plaintiff,

v.

CITY OF VANCOUVER, a Washington municipal corporation; PATRICK J. McDONNELL, Vancouver City Manager; and MITCH BARKER, Acting Police Chief,

Defendants.

CASE NO. C06-5688BHS

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendants' Motion for Partial Summary Judgment Dismissal of Claims Barred by Statute of Limitations, Settlement Agreement, and Other Claims (Dkt. 92) and Plaintiff's Cross Motion for Summary Judgment Voiding Section 4 of the Settlement Agreement and Declaration and Waiver of Future Claims (Dkt. 120). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Unless otherwise indicated, the following facts are undisputed: Plaintiff Navin Sharma began working for the Vancouver Police Department in March of 1997 as a patrol officer. Dkt. 123 at 1. Mr. Sharma also served as Team Leader for the City of Vancouver's SWAT-Tactical EMS Unit, which provided medical intervention and aid in emergency situations involving the SWAT team. Dkt. 123 at 2. Mr. Sharma's

employment with the City of Vancouver was terminated on December 21, 2006. Dkt. 25 at 7. Plaintiff commenced this suit against the City of Vancouver, Patrick J. McDonnell, and Mitch Barker on November 22, 2006. Dkt. 1. Mr. Sharma alleges the following causes of action: (1) 42 U.S.C. § 1981, (2) 42 U.S.C. § 1983, and (3) violation of the Washington Law Against Discrimination, RCW 49.60. Dkt. 25 at 10. Plaintiff seeks damages for emotional distress and anxiety. *Id.* at 11.

Mr. Sharma has sued the City of Vancouver on at least two prior occasions. On September 5, 2000, Mr. Sharma commenced suit against the City of Vancouver in Clark County Superior Court. Dkt. 95, Exh. 1 at 7. That complaint does not list specific causes of action but alleges that Mr. Sharma "suffered damages as a result of actions by defendant and its employees." Dkt. 95, Exh. 1 at 7. The tort claim relating to this complaint alleges that Mr. Sharma was retaliated against after testifying in an internal affairs investigation. Dkt. 95, Exh. 2 at 9. Mr. Sharma contends that Vancouver Police Department Officers, in retaliation for Mr. Sharma's testimony, made fictitious calls to the Clark Regional Call Center 911 emergency line and used "a mocking and degrading East Indian accent." Dkt. 121 at 3.

The case was ultimately terminated by way of a stipulated judgment of dismissal with prejudice. Dkt. 95, Exh. 4 at 14. The settlement was memorialized in a written agreement signed by Mr. Sharma. Dkt. 150-2, Exh. A at 69. Under the terms of the agreement, Mr. Sharma remained employed with the City of Vancouver and received $287,000 in exchange for a release of all claims. *Id.* at 64.

The settlement agreement also contained an arbitration provision, which provided in part as follows: "For a period commencing February 21, 2001 and continuing through February 20, 2005, Sharma agrees to submit to binding arbitration on any subsequent claims of harassment, retaliation or discrimination that he alleges against the City." *Id.* at 65. If Mr. Sharma elected to invoke this provision, he was required to resign from his employment with the City of Vancouver and would receive a minimum of $100,000. *Id.*

The agreement limited Mr. Sharma's arbitration damages, including fees and costs, to $100,000. *Id.* Finally, the agreement provides that the parties would each pay half of the arbitrator's fees. *Id.* at 66.

In 2004, Mr. Sharma filed suit alleging that Dan Monaghan of the Vancouver Fire Department committed defamation and painted Mr. Sharma in a false light in a training video. Dkt. 95, Exh. 7 at 25. This lawsuit ended with a stipulated order of dismissal. Dkt. 95 at 4.

## II. DISCUSSION

Defendants seek partial summary judgment on four grounds: First, Defendants contend that Mr. Sharma released the City of Vancouver ("the City"), its employees, its officers, and its agents for any liability for actions occurring prior to March 6, 2001, the date on which Mr. Sharma settled his 2000 lawsuit against the City. Dkt. 92 at 2. Defendants therefore seek partial summary judgment as to any liability for actions occurring before the March 2001 settlement. Second, Defendants contend that Mr. Sharma's March 2001 settlement released all claims of retaliation occurring between February 21, 2001, and February 20, 2005, and seek summary judgment as to such claims. *Id.* Third, Defendants seek summary judgment as to any conduct supporting Mr. Sharma's 42 U.S.C. § 1981 claim and occurring prior to November 22, 2002, and as to any conduct supporting Mr. Sharma's other claims and occurring prior to November 22, 2003. Fourth, Defendants seek summary judgment as to medical, general, and certain wage loss because Mr. Sharma has admitted that the seizure and back fracture he experienced days after his termination were not caused by Defendants.

Also pending before the Court is Mr. Sharma's cross motion, which asks the Court to find as a matter of law that the arbitration provisions of the March 2001 settlement agreement and his subsequent declaration are unconscionable and void. Dkt. 121 at 2. Alterntively, Mr. Sharma contends that while he does not seek damages for conduct that is outside the relevant limitations period, evidence of discriminatory acts taking place

outside the limitations period may be considered as proof of Defendants' intent. Dkt. 121 at 2. Mr. Sharma also opposes summary judgment on his wage loss claim because there is a genuine issue of material fact as to whether Mr. Sharma was unable to work due to psychological symptoms and stress caused by Defendants' conduct. Dkt. 121 at 3.

**A. SUMMARY JUDGMENT STANDARD**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at

trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B. RETALIATION OCCURRING BETWEEN FEBRUARY 21, 2001, AND FEBRUARY 20, 2005**

Defendants contend that Mr. Sharma, with advice of counsel, unequivocally waived his right to sue for any discriminatory or retaliatory acts occurring between February 21, 2001, and February 20, 2005. Dkt. 92 at 15. While Defendants concede that the March 2001 settlement cannot operate to prospectively release the City from liability for discrimination or retaliation occurring between February 21, 2001, and February 20, 2005, Defendants contend that, by virtue of Mr. Sharma's agreement to arbitrate such claims, Mr. Sharma is equitably estopped from litigating such claims. Dkt. 92 at 17. The Court disagrees.

Defendants cite *Lavin v. Marsh*, 644 F.2d 1378, 1382 (9th Cir. 1981), as authority for their equitable estoppel argument. In *Lavin*, the Ninth Circuit summarized the elements of equitable estoppel as follows:

> The doctrine of equitable estoppel is available if the following elements are present:
> (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

*Lavin*, 644 F.2d at 1382. In their motion, Defendants contend that the City of Vancouver relied on the arbitration provisions of the settlement agreement:

> The City relied on this representation as a mutual understanding that Sharma . . . would submit those claims to an arbitral, not judicial, forum. [citation omitted] The City accepted Sharma's promise with the expectation that should discrimination and retaliation continue . . . Sharma would leave employment as a Vancouver police officer. . . . He never took this step, and the City relied on this conduct to believe that Sharma had not experienced any retaliation or discrimination before February 20, 2005.

*See* Dkt. 92 at 16-17. Defendants fail to offer evidentiary support demonstrating that the City of Vancouver took any actions in reliance on Mr. Sharma's execution of the settlement agreement and fail to allege any injury occurring as a result of such reliance. Moreover, the Court is reluctant to hold that Mr. Sharma is equitably estopped from raising claims by virtue of a provision that both parties agree is unenforceable as to such claims.

Because Defendants concede that the settlement agreement cannot, as a matter of law, operate to prospectively release the City of Vancouver from liability for acts that had not yet occurred and do not otherwise oppose Plaintiff's cross motion, the cross motion is granted in this respect.

**C. STATUTES OF LIMITATIONS**

In deciding claims under Section 1983, federal courts borrow state statutes of limitations on a statewide basis. *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 124 (2005) ("42 U.S.C. § 1988 is 'a directive to select, in each State, the one most appropriate statute of limitations for all § 1983 claims.'"). The Washington statute applicable to Section 1983 claims provides for a three-year statute of limitations. *Joshua v. Newell*, 871 F.2d 884, 886 (9th Cir. 1989) ("In 'considering § 1983 claims [we] should borrow the general or residual statute for personal injury actions.' In Washington, that would be three years."). Section 1981 claims are governed by the four-year statute of limitations of 28 U.S.C. § 1658. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 383-85 (2004). Discrimination claims under Washington's law against discrimination are subject to Washington's three-year statute of limitations for personal injury actions. *Antonius v. King County*, 153 Wn.2d 256, 261 (2004); RCW 4.16.080(2).

Defendants contend that Mr. Sharma asserts several "claims" that fall outside the statute of limitations, such as the portrayal of Mr. Sharma in a 2001 training video and the subsequent boycotts of Mr. Sharma's training seminars, a photograph that was left on Mr. Sharma's car shortly after the March 2001 settlement, and an alleged phone call soliciting

money in 2001. Dkt. 92 at 13-14. Mr. Sharma concedes that he "is not seeking damages on conduct that is time barred by the WLAD (prior to November 22, 2003), 42 U.S.C. § 1983 (prior to November 22, 2003), or 42 U.S.C. § 1981 (prior to November 22, 2002)" but contends that "time-barred evidence is relevant to establish Defendant's discriminatory and retaliatory motive." Dkt. 121 at 2, 18. The admissibility of evidence regarding actions outside the relevant limitations periods is an issue that is not yet squarely before the Court. As Plaintiff concedes that certain conduct occurred outside of the relevant limitations periods and that he does not seek damages for such conduct, Defendants' motion is granted in this respect. Accordingly, any WLAD and Section 1983 claims premised upon conduct occurring before November 22, 2003, and any Section 1981 claims premised upon conduct occurring before November 22, 2002 are dismissed.

**D. CLAIMS PREMISED ON PRE-SETTLEMENT CONDUCT**

Defendants contend that Mr. Sharma unequivocally released the City of all liability for conduct occurring before March 6, 2001, and therefore seek summary judgment as to claims premised on conduct occurring before that date. Dkt. 92 at 14. Plaintiff does not address this argument but does not appear to base his claims on conduct occurring before March of 2001. *See* Dkt. 121 at 2. Defendants' motion is therefore granted in this respect.

**E. DAMAGES FROM BACK FRACTURE**

Defendants contend that there is no admissible evidence from which a reasonable jury could conclude that Mr. Sharma's termination caused his back fracture and that Mr. Sharma should therefore be barred, as a matter of law, from claiming medical, general, and wage loss damages resulting from his inability to work full time. Dkt. 92 at 17-18. In response, Mr. Sharma contests only whether he is entitled to recover wage loss incurred by virtue of not working full time and contends that "he is not asserting a general damages claim for any physical pain and suffering associated with the back injury, or for medical expenses related to treatment of that injury." Dkt. 121 at 22. Defendants' request

for summary judgment as to Plaintiff's claim for medical and general damages relating to his back injury is therefore granted.

Defendants contend that a similar result is required as to Plaintiff's claim for wage loss because Plaintiff testified in his deposition that his inability to work full time is related only to his back injury. Dkt. 92 at 18. The Court is not persuaded by this characterization of Plaintiff's deposition testimony. Plaintiff's deposition testimony regarding his part-time work is as follows:

> Q. And how many hours do you work per week?
> A. Right now, I'm working approximately -- I'm on call at -- I would say it average out -- averages out approximately 15 to 20 hours a week.
> Q. And are you -- go ahead. Sorry.
> A. Yeah. Maybe 15 hours a week.
> Q. And what do you make per hour?
> A. I think it's around $40 an hour; somewhere in there.
> Q. Do you currently derive income from any source other than your work as a nurse?
> A. Minor income. Occasionally, I teach a class.
>
> ***
>
> Q. But you make -- you're -- you're working about 15 hours a week at 40 bucks an hour; is that right?
> A. Right.
> Q. Okay. And why aren't you working full-time right now?
> A. My back is still steadily improving --
> Q. Do you -- do you --
> A. -- slowly.
>
> ***
>
> Q. Is there any other reason that you're not working more than 15 hours per week currently besides your back?
> A. It's --
> MR. BLANKENSHIP: Is --
> THE WITNESS: -- primarily pain in my back.
> MR. BLANKENSHIP: Talking about as a nurse or in general?
> MS. McDONALD: Well, I believe what he said he has minor income teaching occasionally, and then he works for a nur -- as a nurse 15 to 20 hours per week.
> Q. (By Ms. McDonald) Is -- is a healthcare provider telling you not to work full-time presently?
> A. I physically can't because of my back and my pain. I mean, it -- it's -- when I first had the seizures, I couldn't even work for a few -- few months, so it's gradually being built back up –
> Q. Well, my question --
> A. -- the whole time.
> Q. My question was: Has a healthcare provider advised you to not work full-time?
> A. Yes. My physicians actually told me to be careful about my back and not overdo it.

> Q. So, again, I will repeat the question for the third time. Has a physician told you to not work full-time?
> A. Not specifically in those terms.

Dkt. 150-2, Exh. A at 57-59. From this exchange and Plaintiff's statement that back pain was the primary reason he was not working full time, it is unclear whether Plaintiff attributes his inability to work full time *solely* to his back injury. In addition, Plaintiff's treating psychologist, Suzanne R. Best, Ph.D., testified that she recommended Mr. Sharma not return to nursing full time until January of 2008 due to the stressful nature of his nursing job and to his psychological issues. Dkt. 122-2, Exh. H at 44-45; *see also* Dkt. 124 at 2 ("[I]n my opinion Officer Sharma was not functioning psychologically at a sufficient level to fulfill his duties as an on-call emergency room nurse, irrespective of his back injury."). While Defendants contend that Dr. Best's statements contradict Mr. Sharma's deposition testimony, the resolution of factual conflicts is the province of the jury. Summary judgment on Mr. Sharma's claim for wage loss would be improper and Defendants' motion is therefore denied in this respect.

**F. DISCRIMINATION AND RETALIATION**

Defendants sought partial summary judgment on four grounds:

> A. Whether any [sic] Sharma is time barred from raising any discrimination or retaliation claims for conduct occurring prior to November 22, 2002 for purposes of his 42 U.S.C. § 1981 claim, and prior to November 22, 2003, for all other causes of action.
> B. Whether Sharma released the City and any City official, employee, or representative from any liability for alleged discriminatory or wrongful conduct by any City official occurring prior to March 6, 2001, thereby precluding recovery in this lawsuit for any damages resulting from such conduct.
> C. Whether Sharma knowingly, intelligently, and voluntarily waived his right to sue for discrimination occurring between February 21, 2001 and February 20, 2005.
> D. Whether Sharma is barred from recovering any damages related to his September 2006 seizure and subsequent back fracture because he no longer seeks them in this case and no competent evidence exists to link the fracture to defendants' conduct.

Dkt. 92 at 9-10. In response to the cross motion, Defendants contend that Mr. Sharma fails to create a genuine issue of material fact as to whether he experienced retaliation or discrimination before March of 2006. Dkt. 132 at 2-3. Defendants devote two pages of

briefing to this contention. *See id.* Similarly, Defendants' reply addresses several factual contentions and urges the Court to "enter summary judgment and preclude plaintiff from claiming the . . . actions are either (a) discriminatory/retaliatory, or (b) conduct perpetuated by these defendants." Dkt. 126 at 3. Because Defendants did not seek summary judgment on these grounds, the Court declines to reach these arguments.

**III. ORDER**

Therefore, it is hereby

**ORDERED** that Defendants' Motion for Partial Summary Judgment Dismissal of Claims Barred by Statute of Limitations, Settlement Agreement, and Other Claims (Dkt. 92) is **GRANTED in part** and **DENIED in part**, and Plaintiff's Cross Motion for Summary Judgment Voiding Section 4 of the Settlement Agreement and Declaration and Waiver of Future Claims (Dkt. 120) is **GRANTED** as provided herein.

DATED this 16th day of July, 2008.

BENJAMIN H. SETTLE
United States District Judge